# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| RYAN SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:11-CV-374-TLS |
| | ) | |
| DR. JASON PALMATEER, | ) | |
| and MICHAEL MATTERN, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

The case before the Court is a 42 U.S.C. § 1983 action brought by the Plaintiff, Ryan Smith, a pretrial detainee, against the Defendants, nurse practitioner Dr. Jason Palmateer and Jail Commander Michael Mattern, alleging that the Defendants denied the Plaintiff medical treatment while he was held in the Marshall County, Indiana, Jail. Presently before the Court are the Defendants' Motions for Summary Judgment [ECF Nos. 78 & 82] and the Defendants' Motions to Strike [ECF Nos. 91 & 93]. The Defendants seek summary judgment on all counts and request the Court to strike all or sections of the Plaintiff's Response to their Motions for Summary Judgment, styled as an "Affidavit of Truth" [ECF No. 90].[1] This Opinion and Order addresses all outstanding motions relating to the Complaint.

## DEFENDANTS' MOTIONS TO STRIKE

The Defendants have moved to strike portions or all of the Plaintiff's Response to their Motions for Summary Judgment [ECF No. 90], styled as an "Affidavit of Truth." The Court will

---

[1] The Plaintiff submitted a letter with the "Affidavit of Truth" indicating it was to serve as the Response to both of the Defendants' Motions for Summary Judgment.

analyze the Defendants' arguments for striking only insofar as they are necessary to decide the motion for summary judgment.[2]

Under Federal Rule of Civil Procedure 56(c)(4), any affidavit or declaration "used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." On a motion for summary judgment, a court must disregard parts of an affidavit that fail to comply with this rule. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987). The following statements do not comply with the rule and should be disregarded: "(1) conclusory allegations lacking supporting evidence; (2) legal argument; (3) self-serving statements without factual support in the record; (4) inferences or opinions not grounded in observation or other first-hand experience; and (5) mere speculation or conjecture." *Heltzel v. Dutchmen Mfg., Inc.*, No. 3:06-CV-227, 2007 WL 4556735, at *4 (N.D. Ind. Dec. 20, 2007) (quotation marks and citations omitted). Although "self-serving statements in affidavits without factual support in the record carry no weight," *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (emphasis omitted), "a self-serving affidavit supported by facts in the record [can] defeat summary judgment," and the record "may include the self-serving affidavit itself, provided that the affidavit meets the usual requirements for evidence on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial," *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (quotation marks and citations omitted).

---

[2] For those portions of the Motions to Strike that address evidence not material to the outcome of the Motions for Summary Judgment, the Court will deny the Motions to Strike as moot.

### A. First Challenged Statement

The Defendants[3] challenge the admissibility of the following text from the Plaintiff's "Affidavit of Truth":

> On December 4, 2010, I was informed by the Jails staff that Micheal Mattern had gave the order that I was to be placed in the Jails medical area due to my injuries and that I was to remain in the medical area until the jails physician seen and cleared me to be moved into general population.

(Aff. of Truth 1, ECF No. 90.) In the Defendants' view, the statements are inadmissible hearsay and should be stricken. (Def.'s Mot. to Strike the Aff. of Ryan Smith, ECF No. 91; Def.'s Mot. to Strike Portions of Pl.'s Aff. of Truth, ECF No. 93.)

The Court agrees with the Defendants that the foregoing text is inadmissible. The text is an out of court statement offered to prove the truth of the matter asserted and is unsupported by an accompanying affidavit or deposition transcript of the jail staff, rendering the statements hearsay. Therefore, the Court will grant the Defendants' Motion to Strike the forgoing text from the Plaintiff's Affidavit of Truth.

### B. Second Challenged Statement

The Defendants challenge the admissibility of the following text from the Plaintiff's Affidavit of Truth: "On December 16, 2010, Jail Officer Martin logged into the Jails log books that she noticed that I was having trouble walking around the dayroom." (Aff. of Truth, 2.) The Defendants make the same challenge to the following text found on the same page of the

---

[3] In their respective Motions to Strike, the Defendants make some overlapping arguments and some unique arguments. For the purpose of addressing the Motions to Strike, "Defendants" shall include all arguments brought by the Defense, both overlapping and unique.

Plaintiff's Affidavit of Truth:

> Officer Martin than told Inmate Derrick Platts-Perish that he had to get out of my cell. After that me and officer Martin got into an argument. Derrick Plats-Perish heard all of the argument and came back into my cell and asked for my parents number and stated that he was going to contact my family and have them get a hold of a lawyer because I was in need of serious medical attention and wasn't receiving any.

(*Id.*) The Defendants argue these out of court statements of Officer Martin and Derrick Platts-Perish do not fall within any exception and thus are inadmissible hearsay.

With most of these two challenged statements the Plaintiff offers his own description of events as they occurred, and he is clearly able to testify as to what he saw or heard. The only portion of the statement that raises possible hearsay concerns is the final phrase: "because I was in need of serious medical attention and wasn't receiving any." It is clear from the preceding text that Platts-Perish "stated that he was going to" contact the Plaintiff's family in order to secure a lawyer for his behalf. The ambiguity lies in whether Platts-Perish "stated" the corresponding reasoning or if that is merely the Plaintiff's explanation for why he thought Platts-Perish was going to contact his family. The key to determining the admissibility of the suspect phrase is the purpose for which the Plaintiff offers it. Is he offering it to prove the truth of the matter asserted; namely is Platts-Perish's statement that he was going to contact the Plaintiff's family "because [the Plaintiff] was in need of serious medical attention and wasn't receiving any" offered to prove the truth that the Plaintiff was indeed in need of but not receiving any medical attention? If so, this would be inadmissible hearsay. The Court can think of no other purpose for which the Plaintiff would offer this evidence except to prove that Platts-Perish's statement and rationale for giving it provides proof that the Plaintiff was being denied medical treatment. Offering the evidence for such a purpose is inadmissible hearsay unless supported by an affidavit or

4

deposition transcript. The Plaintiff has not offered an affidavit or deposition transcript to support the statement, so the Court finds the suspect phrase to be hearsay and will grant the Defendants Motion to Strike that portion of the Affidavit of Truth.

**C.      Third Challenged Statement**

The Defendants challenge the admissibility of the following text from the Plaintiff's Affidavit of Truth: "His [Mattern's] response was that sometimes the doctor just don't have time to see everyone." (Aff. of Truth 3.) Again, the Defendants argue this is inadmissible hearsay without any applicable exception.

The Court disagrees with the Defendants that the statement attributed to Defendant Mattern is inadmissible. Unlike the examples previously discussed, this statement is classified as nonhearsay under Federal Rule of Evidence 801(d)(2). Although the Plaintiff again offers an out of court statement to prove the truth of the matter asserted, here the statement is made by Defendant Mattern, a party-opponent. Under Federal Rule of Evidence 801(d)(2)(A), a statement made by an opposing party is expressly not hearsay when offered by the proponent against the opposing party. Here, the Plaintiff is offering the statement of the Defendant and such statement clearly falls within the definition of nonhearsay under the Federal Rules of Evidence. Therefore, the Court will deny the Defendants' Motion to Strike this portion of Plaintiff's Affidavit of Truth.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, a nonmovant must be able to show that a reasonable jury could return a verdict in her favor; if she is unable to "establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), summary judgment must be granted. A bare contention that an issue of fact exists is insufficient to create a factual dispute, but the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598–99 (7th Cir. 2000). "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

## STATEMENT OF FACTS

The following facts are undisputed. The Plaintiff was held at the Marshall County, Indiana, Jail as a pretrial detainee from December 3, 2010, to March 27, 2011. (Compl. 3, ECF No. 1.) When he arrived at the jail, the Plaintiff had preexisting burn injuries covering over 62% of his body. (*Id.*) The following day, on December 4, 2010, jail authorities moved the Plaintiff from the booking area to the medical area in response to his complaints of pain related to these

6

burns. (Resp. to Def. Mattern's Request to Admit, ECF No. 79-1.) On December 6, 2010, the Plaintiff complained of pain in his hands to a jailer, who helped the Plaintiff apply lotion to the back of his hand. (*Id.*) That afternoon, Defendant Michael Mattern, Jail Commander, notified Defendant nurse practitioner Dr. James Palmateer that the Plaintiff was experiencing pain and discomfort in his hands as well as cracking of the skin. (Aff. of Kelley L. Carroll, N.P. 3, ECF No. 83-1.)

The Plaintiff's first visit with Defendant Palmateer occurred the following morning, on December 7, 2010. (*Id.*) The Plaintiff requested creams and ointments for his burns. (*Id.*) Defendant Palmateer noted dry skin and extensive scarring to 60% of the Plaintiff's body, but determined that the Plaintiff was not in acute distress as he had no problems with fever or chills, difficulty breathing, or an irregular heart rate/rhythm. (*Id.*) Defendant Palmateer diagnosed the Plaintiff with eczema,[4] late affect of burns, and methamphetamine abuse and advised that he should shower daily and keep the skin moist with lotions but could return to the general population. (*Id.*)

The second visit in which the Plaintiff was seen by a physician occurred December 16, 2010, when he had staples removed by Dr. Holm at the Holm Clinic Urgent Care Center. (*Id.*; Resp. to Def. Mattern's Request to Admit 2.) As a precautionary measure to reduce the risk of any possible infection, Dr. Holm prescribed the Plaintiff the antibiotic Keflex (3x daily for ten days). (Aff. of Kelley L. Carroll, N.P. 3; Resp. to Def. Mattern's Request to Admit 3.) Five days later, on December 21, 2010, Defendant Palmateer prescribed the Plaintiff two Tylenol to be taken morning and evening. (Aff. of Kelley L. Carroll, N.P. 3.)

---

[4] Eczema is a noncontagious inflammation of the skin attended with itching and the exudation of serous matter. *See Webster's II New Riverside University Dictionary* 417 (1994).

In the following two weeks, specifically on December 27, 2010, and January 5, 2011, the Plaintiff made two visits to the jail's medical area to be treated for a fever. (Resp. to Def. Mattern's Request to Admit 3–4, ECF No. 79-1.) The Plaintiff also requested and was granted permission to be transferred to another cell, which made it easier for him to get into the shower and depart the company of a cell mate with whom he was uncomfortable. (*Id.*; Docs. provided in Resp. to Pl.'s Mot. for Produc. of Docs., ECF No. 63 at 6–7.) Among the reasons given to persuade the jailers that his request should be granted, the Plaintiff expressly noted that his hands and legs were fine to be in other blocks, that the doctor said he need not be segregated from the rest of the population, and that there was no reason for which he should not be moved. (Docs. provided in Resp. to Pl.'s Mot. for Produc. of Docs., ECF No. 63 at 6–7.)

The Plaintiff's next visit with Defendant Palmateer occurred on January 18, 2011, one day after his submission of a written request for medical care. (Aff. of Kelley L. Carroll, N.P. 4; Resp. to Def. Palmateer's Request to Admit 2, ECF No. 79-2.) Defendant Palmateer assessed the Plaintiff, who was requesting pain medication, and again found no acute distress as the Plaintiff was alert with clear lungs and a regular heart rate and rhythm. (Aff. of Kelley L. Carroll, N.P. 4, ECF No. 83-1.) Defendant Palmateer assessed the Plaintiff as follows: "Methamphetamine abuse, drug seeker, complications of skin secondary to burns/eczema, [and] chronic insomnia/pain." (*Id.*) Based on his assessment, Defendant Palmateer decided upon the following course of treatment: continue use of lotions and creams, discontinue use of Tylenol, and begin taking the prescription medications Ultracet (a.k.a. Tramadol, a prescription, non-narcotic, pain reliever) and Amitriptyline for insomnia and chronic pain. (*Id.*)

Approximately one month later, on February 23, 2011, the Plaintiff filed a grievance

alleging he had made multiple requests to see a doctor to no avail and that he had only been seen once by a doctor during his three months at the Marshall County Jail. (*Id.* 4–5; Docs. provided in Resp. to Pl.'s Mot. for Produc. of Docs., ECF No. 63 at 10.) Defendant Mattern received the grievance on Friday, February 25 and notified Defendant Palmateer the same day, who responded that he would see the Plaintiff the following Tuesday and would assess all requests but that he would not grant a request for controlled substances. (Aff. of Kelley L. Carroll, N.P. 4–5; Docs. provided in Resp. to Pl.'s Mot. for Prod. of Docs., ECF No. 63 at 11.) In addition to notifying Defendant Palmateer, Defendant Mattern explored the Plaintiff's records and noted that although Defendant Palmateer had not seen the Plaintiff recently (last visit 01/18/11), he had recently ordered medications and reviewed the Plaintiff's medical requests. (Docs. provided in Resp. to Pl.'s Mot. for Prod. of Docs., ECF No. 63 at 10.) Defendant Mattern noted that Defendant Palmateer reviews all medical requests and determines what action, if any, needs to be taken based upon the request. (*Id.*) Also on February 25, the Plaintiff visited the medical area and was given gauze and triple antibiotic ointment to treat an open wound on his leg. (Resp. to Def. Mattern's Request to Admit 5, ECF No. 79-1.)

As promised, Defendant Palmateer saw the Plaintiff on March 1, 2011. (Aff. of Kelley L. Carroll, N.P. 5.) Defendant Palmateer noted that the Plaintiff had refused to take his Ultracet prescription for the previous two weeks and was now requesting lotions and a restart on Amitriptyline. (*Id.*) As before, the Plaintiff was alert, his lungs were clear, his heart rate and rhythm were normal, and he showed no signs of acute distress. (*Id.*) Defendant Palmateer noted the Plaintiff's dry skin and gave the following assessment: "Amphetamine abuse, anxiety, eczema primarily/secondarily bacterial, burns secondary to Methamphetamine explosion." (*Id.*)

Defendant Palmateer prescribed the Plaintiff Amitriptyline and Keflex, an antibiotic, told him to use lotion three times daily, and told him to apply Bactroban ointment in the morning and evening. (*Id.*)

**ANALYSIS**

The Plaintiff argues that the Defendants violated his constitutional rights by acting with deliberate indifference in denying him medical treatment during his time in the Marshall County Jail. The Defendants counter that their actions were reasonable and did not amount to deliberate indifference under the Fourteenth Amendment. Because the Plaintiff was a pretrial detainee at the time of these events, the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment applies to his denial of medical treatment claim. *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009). The governing standards are functionally equivalent, however, and "anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment." *Id.* at 475. "In . . . claims of deliberate indifference to medical needs, the Eighth and Fourteenth Amendment standards are essentially interchangeable." *Id.* at 473. "To establish a claim of deliberate indifference based on the denial of medical care, the plaintiff must show both an objectively serious medical condition and the defendant's deliberate indifference to that condition." *Smego v. Mitchell*, — F.3d. —, 2013 WL 3765295, at *3 (7th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012); *Arnette v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)). A medical condition is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."

*Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007) (internal quotation marks omitted). The Defendants do not address whether the Plaintiff's medical condition was objectively serious in their briefs and instead solely argue that they were not deliberately indifferent to the Plaintiff's medical needs.

To demonstrate deliberate indifference, "a plaintiff must show that the defendant acted with a sufficiently culpable state of mind, something akin to recklessness." *Arnette*, 658 F.3d at 751 (internal quotation marks omitted); *see also Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) ("Proving that [a defendant] was deliberately indifferent . . . requires more than a showing of negligent or even grossly negligent behavior." (internal quotation marks omitted)). A defendant "acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Arnette*, 658 F.3d at 751. A jury can infer deliberate indifference when the professional's decision is "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Id.* (quotation marks omitted). Thus, "[a] plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Id.* (internal quotation marks omitted).

The designated evidence in the record shows that the Defendants were responsive to the Plaintiff's medical needs. On three of the four occasions in which the Plaintiff saw a medical practitioner between December 7, 2010, and March 1, 2011, the Plaintiff requested a visit with a physician (the lone exception being the December 16, 2010, visit in which the Plaintiff's staples

11

were removed at the Holm Clinic). The first (12/07/2010) and third (01/18/2011) visit between Defendant Palmateer and the Plaintiff occurred the day after the Plaintiff made his request to be seen. The only instance in which it took more than one day for the Plaintiff to be seen by a physician was the March 1, 2011, visit, his fourth overall visit, where the Plaintiff filed his grievance/request to be seen on Wednesday, February 23, 2011. Defendant Mattern received the grievance two days later and promptly notified Defendant Palmateer, who saw the Plaintiff early the following week, six total days after the grievance/request was filed. Although more time elapsed before being seen by a physician in this instance, the record shows Defendant Mattern investigated the Plaintiff's treatment history and noted that Defendant Palmateer had recently ordered medication for the Plaintiff and reviewed the Plaintiff's medical requests since their last visit. It is apparent that at the Marshall County Jail, medical requests are transferred to the attending physician who makes the medical determination of how often an inmate is seen and what treatment an inmate receives. The Court finds this practice reasonable, as a medical professional is better suited to assess the medical needs of inmates and pretrial detainees than the Jail Commander. As such, Defendant Mattern reasonably relied on Defendant Palmateer's professional judgment as to the timing and treatment for the Plaintiff while housed at the Marshall County Jail. Furthermore, the record shows prompt communication between the Defendants regarding the Plaintiff's requests for treatment and complaints. The Plaintiff fails to bring forth any evidence suggesting Defendant Mattern was unresponsive to the Plaintiff's needs, either by untimely handling his requests or unreasonably relying on Defendant Palmateer's medical judgment.

    The designated evidence reveals not only the number of visitations the Plaintiff had with

medical personnel, but also the assessments of his condition and treatment provided during his stay at the Marshall County Jail. In each visit Defendant Palmateer noted the Plaintiff's pain and discomfort from his injuries, but he never found the Plaintiff to be in any form of acute distress. Defendant Palmateer prescribed a series of lotions and ointments to treat the affected skin areas as well as various prescription antibiotics and pain relievers. Some of these prescription orders (and renewals) occurred outside of the aforementioned visits between the Plaintiff and Defendant Palmateer, suggesting the medical staff continued to monitor the Plaintiff's care even between his visits with a physician. Defendant Mattern noted in his investigation of the Plaintiff's treatment regarding his grievance that Defendant Palmateer had been reviewing the Plaintiff's medical requests and ordering medication for him. The same report states the Plaintiff, on his own accord, refused to take one of the prescribed medications. In reviewing the treatment of the Plaintiff during this time frame, there is nothing about the Defendants' actions that appears "so inadequate that it demonstrate[s] an absence of professional judgment." *Arnette*, 658 F.3d at 751.

The Defendants offer the affidavit of Kelley L. Carroll, N.P., in support of their motion for summary judgment. Carroll is an experienced medical care provider for inmates in correctional facilities, currently responsible for providing medical care for inmates in nine Indiana county jails. She formerly served as a part-time lecturer at the Indiana University School of Nursing in Indianapolis. (Aff. of Kelley L. Carroll, N.P. 1–2, ECF No. 83-1.) The Defendants offer her affidavit as expert testimony regarding the medical care the Plaintiff received while in the Marshall County Jail, asserting that she is familiar with the standard of care for nurse practitioners in such settings and that the timing and number of visits by Defendant Palmateer as well as the diagnoses and treatment given were appropriate and met a reasonable standard of

care. Carroll asserts the actions taken regarding the Plaintiff's medical needs falls within accepted professional standards and judgment.

In responding to the Defendants' Motions for Summary Judgment, the Plaintiff presents no evidence to contradict Carroll's assertions. Indeed, there is nothing in the record or in the Plaintiff's Affidavit of Truth which suggests that either Defendant acted negligently with respect to the Plaintiff, and even if there were, negligence alone is not enough to rise to the level of deliberate indifference necessary for the Plaintiff to prevail on his claim. To meet this standard, the physician's treatment must be "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Arnette*, 658 F.3d at 751 (quotation marks omitted). Nothing on the face of the designated evidence suggests the treatment of the Plaintiff was so inadequate as to be outside accepted medical judgment. The Defendants offer expert testimony asserting the Plaintiff's treatment was within accepted professional standards and judgment; the Plaintiff offers no evidence suggesting the Defendants' care was so far afield that it raised an inference of an absence of medical judgment. Indeed, "[w]ithout some evidence, such as expert opinion testimony, creating a reasonable inference that [the defendant's] treatment during this time frame was so inadequate that it demonstrated an absence of professional judgment, [the plaintiff] cannot succeed against him on summary judgment." *Arnett*, 658 F.3d at 759. Even though *pro se* plaintiffs generally lack the legal skills of attorneys and hence are entitled to have their complaints construed liberally, *see id.* at 751, they still have the burden to come forth with evidence in response to a defendant's motion for summary judgment that demonstrates a genuine issue of material fact to survive summary judgment. *See id.* at 760 (finding that the "[plaintiff's] pro se status doesn't alleviate his burden on summary judgment").

Here, the Plaintiff has offered no evidence which might reasonably create an inference that either Defendant's conduct was so far afield of professional standards that it was not actually based on medical judgment, and thus the Plaintiff has failed to show that the Defendants exhibited deliberate indifference towards the his medical needs.

As such, the Court finds that there is no evidence presented which might create a reasonable inference in the minds of a jury that the Defendants acted with deliberate indifference towards the Plaintiff or create a genuine issue of material fact. The Defendants are, therefore, entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendants' Motions for Summary Judgment [ECF Nos. 78 & 82]. Moreover, as discussed above, the Court GRANTS IN PART, DENIES IN PART, and DENIES IN PART AS MOOT the Motions to Strike [ECF Nos. 91 & 93]. The Court DIRECTS the Clerk to enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on September 18, 2013.

                                           s/ Theresa L. Springmann
                                          THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT
                                          FORT WAYNE DIVISION